\* WILLIAM ZIEGLER, RESPONDENT, *v.* ALFRED C. CHAPIN,
MAYOR, ETC., AND OTHERS, APPELLANTS.

*Statute — chapter* 335 *of* 1886, *authorizing an agreement between the City of Brooklyn
and a water-works company for the purchase of the water-works or their condemnation "within two years" — the time to agree is limited to two years.*

Where a municipal corporation is authorized to purchase the works of a private
water-works company, at such price as may be agreed upon between its officers
and the said company, and in case the parties are unable to agree upon a price
the power is given to the municipal corporation, and it is authorized, "within
two years," to acquire such property of the water-works company, by the exer-
cise of the right of eminent domain, the time within which an agreement may
be made for the purchase of the property expires at the end of such two years,
and after the expiration of that time the act does not authorize a contract for
such purchase to be made between the municipal corporation and the water-
works company.

APPEAL by the defendants, Alfred C. Chapin, Mayor, and by the
Comptroller and Auditor of the City of Brooklyn, and also by
the Long Island Water Supply Company, from an order made at
Special Term under date of January 15, 1891, and entered in the
office of the clerk of the county of Kings on January 16, 1891,
which continued a temporary injunction theretofore granted in
the above-entitled action, and enjoined and restrained the Mayor, the
Comptroller and the Auditor of the City of Brooklyn during the
pendency of the action from purchasing the property and franchises
of the defendant, The Long Island Water Supply Company, or any
of its stocks or bonds, or from carrying out the contract mentioned
in the complaint, and made on or about December 22, 1890.

The action was brought by a taxpayer of the city of Brooklyn to
have a certain contract adjudged to be null, and to restrain the
officials of the city of Brooklyn from carrying out the same or
from purchasing for and on behalf of the city of Brooklyn the
property, franchises, stock or bonds of the Long Island Water
Supply Company.

A temporary injunction was granted, which was continued during
the pendency of the action by the order appealed from.

---

\* Decided March 2, 1891.

*Almet F. Jenks,* for the Mayor, Comptroller and Auditor, appellants.

*Thomas E. Pearsall,* for the Water Supply Company, appellant.

*William J. Gaynor,* for the respondent.

BARNARD, P. J.:

The legislature, by chapter 335 of the Laws of 1886, annexed New Lots, one of the towns of Kings county, to the city of Brooklyn. There was a water company in the town of New Lots, incorporated under the general law of the State, for the purpose of furnishing pure and wholesome water to the authorities and inhabitants of the town. By the annexation act the city assumed the payment of the contract-price of the water to be furnished the town under an existing contract. The city was, by the act of annexation, prohibited from distributing water within the limits of the town until the charter of the water company expired. By the fifth section of the act it was provided as follows:

" The mayor, comptroller and auditor of the city of Brooklyn are hereby authorized, for and in the name of the city of Brooklyn, to purchase the reservoir, well, machinery, pipes, franchises and all other property of said company, when and at such price as may be agreed upon by said officers and by the said company, by its board of directors, who are hereby authorized to sell and convey the same to said city ; and in case said parties shall be unable to agree upon a price for the purchase and sale of the said property of the said company, then in that case the power to acquire said property and franchises by the right of eminent domain is hereby expressly delegated to said city of Brooklyn ; and the said officers, in the name of and for said city, within two years hereafter, may proceed to acquire, and may acquire, all such property by proceedings such as are required for the acquiring of additional land for railway purposes by corporations formed under the provisions of chapter 140 of the Laws of 1850. And all such property, when thus purchased or acquired, shall thereupon become and be a part of the water supply property of said city, but it shall be held subject to two mortgages, now on said property, each made to secure the sum of $250,000 and interest."

No agreement was made for the purchase of the property within the two years after the passage of the act, and no proceedings were taken within that time to acquire the title to the property rights of the water company within two years after the passage of the annexation act. The mayor, comptroller and auditor have now agreed with the board of directors of the water company upon a price for the water company's property.

We think that the power of these officers to buy expired with the limitation of two years, during which period the city had the right to take title by eminent domain. This reading would be in accord with the general course of legislation. The general railroad act provides for an attempt to agree with the owner, and in case of failure to agree that a condemnation can be had, and all condemnation which have since been authorized by the legislature have, so far as possible, been based on this general railroad act. This very section is based upon the general railroad act. If there had been no limitation of the power to condemn, the power to buy would have been continuous and accompanied by a continuous power to condemn. To hold that the power to agree upon a price continued after the power to condemn had expired would subject the city of Brooklyn to perhaps an exorbitant price for the property, as there would be no method by which a disinterested tribunal could be appointed with power to establish a price as between the parties to the purchase. The power to agree upon a price, whenever given, is expressly followed by the right to condemn, and that is limited by time. Both must fall together. We are strengthened in this view by chapter 583, Laws of 1888. By this act all local and special laws were combined and a complete system of condemnation of lands and rights for its water supply was given to the city. The commissioners of city works could, with the consent of the common council, buy lands for the purpose, and, in case of a failure to agree, the right to condemn was given. It is true that the consolidation act was saved by express words from repeal, but that act must necessarily stand as long as the town rights of New Lots were protected by it. There was no intent by saving the consolidation act, to retain certain provisions in it which had become inoperative by lapse of time, and that the legislature deemed section 5 of the consolidation act as without further force is seen from the substitution

of a power to take by condemnation the lands as part of the general city system.

The order should, therefore, be affirmed, with costs and disbursements.

PRATT and DYKMAN, JJ., concurred.

Order affirmed, with costs and disbursements.